UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| KEVIN KEOUGH and NANCY KEOUGH,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES of AMERICA and JANET YELLEN,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. 20-cv-10311-DJC

MEMORANDUM AND ORDER

Casper, J.                                                         December 13, 2021

I.      Introduction

Plaintiffs Kevin Keough ("Kevin") and Nancy Keough ("Nancy"), on behalf of themselves

and all others similarly situated (collectively, "Plaintiffs"), have sued Defendants United States of

America and Janet Yellen ("Yellen"), in her official capacity as Secretary of the Treasury, alleging

that debt collection charges assessed against them violate the Eighth Amendment (Count I), 31

U.S.C. § 3717(e)(1) (Count II), constitute unjust enrichment (Count III) and entitle them to an

accounting (Count IV).  D. 1.  Defendants have moved to dismiss Plaintiffs' complaint for lack of

subject matter jurisdiction.  D. 35.  Plaintiffs have also moved to amend their complaint.  D. 41.

For the reasons discussed below, the Court ALLOWS Defendants' motion to dismiss the operative

complaint, D. 35, and ALLOWS Plaintiffs' motion to amend, D. 41.

II.     **Standard of Review**

A.      **Motion to Dismiss**

Pursuant to Fed. R. Civ. P. 12(b)(1), a defendant may move to dismiss an action for lack of subject matter jurisdiction.  "[T]he party invoking the jurisdiction of a federal court carries the burden of proving its existence."  Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995) (quoting Taber Partners, I v. Merit Builders, Inc., 987 F.2d 57, 60 (1st Cir. 1993)).  To determine if the burden has been met, the Court "take[s] as true all well-pleaded facts in the plaintiffs' complaints, scrutinize[s] them in the light most hospitable to the plaintiffs' theory of liability, and draw[s] all reasonable inferences therefrom in the plaintiffs' favor."  Fothergill v. United States, 566 F.3d 248, 251 (1st Cir. 2009).

B.      **Motion to Amend**

Fed. R. Civ. P. 15(a) "mandates that leave to amend is to be 'freely given when justice so requires' . . . unless the amendment 'would be futile, or reward, inter alia, undue or intended delay.'"  Steir v. Girl Scouts of the USA, 383 F.3d 7, 12 (1st Cir. 2004) (quoting Fed. R. Civ. P. 15(a)(2) and Resolution Trust Corp. v. Gold, 30 F.3d 251, 253 (1st Cir. 1994)).  Rule 15(a)'s "liberal amendment policy . . . does not mean that leave will be granted in all cases."  Acosta-Mestre v. Hilton Int'l of P.R., 156 F.3d 49, 51 (1st Cir. 1998) (quoting 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1487, at 611 (2d ed. 1990)).  If, however, "the proposed amendment would be futile because, as thus amended, the complaint still fails to state a claim, the district court acts within its discretion in denying the motion to amend."  Boston & Me. Corp. v. Town of Hampton, 987 F.2d 855, 868 (1st Cir. 1993), overruled on other grounds by Educadores, Puertorriqueños en Acción v. Hernandez, 377 F.3d 61 (1st Cir. 2004).

### III.    Factual Background

In 2011, the Securities and Exchange Commission ("SEC") sued Infofin, Inc. and Kevin for alleged violations of federal securities laws, and named Nancy as a relief defendant.  D. 1 ¶¶ 2–3; S.E.C. v. Inofin, No. 11-cv-10633-DJC, D. 1 (D. Mass. Apr. 14, 2011).  This Court entered judgment against Nancy for disgorgement in the amount of $368,430.51 and later against Kevin for disgorgement in the amount of $368,430.51, prejudgment interest of $44,500.00 and penalties of $50,000 (collectively, "Judgments").  D. 1 ¶¶ 4–6.  Kevin and Nancy were held jointly and severally liable for the disgorgement amount in Nancy's judgment.  Id. ¶ 7.  The SEC referred the Judgments to the United States Department of the Treasury ("Treasury") for collection.  Id. ¶ 8.

Treasury assigned case and agency debt numbers to Kevin's judgment for each of the disgorgement, pre-judgment interest and civil penalties and sent notices for same on December 13, 2016.  Id. ¶¶ 9–10.  Such notices included amounts assessed by Treasury in addition to the judgment amounts entered by this Court but did not itemize such additional charges or assessments (e.g., interest, administrative costs, penalties).  Id. ¶ 11.  The Treasury notices listed Kevin's outstanding debt to Treasury at $545,305.00 (disgorgement), $69,453.22 (penalties) and $63,377.23 (prejudgment interest), for a total of $678,135.45.  Id. ¶¶ 10, 15-16.  Kevin received two notices dated February 20, 2017, from Continental Service Group, Inc. ("Continental"), a debt collection agency, referring to two Treasury case numbers:  disgorgement and prejudgment interest.  Id. ¶¶ 12, 15–16.  The Continental notices itemized the amounts Kevin owed as principal, interest, administrative costs and penalties.  Id. ¶ 14.  The Continental notices informed Kevin he was being assessed administrative costs of $126,238.94 (disgorgement), which is approximately 34.41% of the principal amount, and $14,008.62 (prejudgment interest), which is approximately 31.48% of the principal amount.  Id. ¶¶ 15–19.  Kevin received a notice on November 16, 2018,

from Performant Recovery, Inc. ("Performant") that he owed $682,302.16 on the disgorgement debt, which was not itemized.  Id. ¶ 22.  Kevin did not receive notices from Performant as to the other debts or any further notices from Continental.  Id. ¶ 23.

Nancy received a letter dated July 25, 2017, from Pioneer Credit Recovery, Inc. ("Pioneer"), a private collection agency contracted by Treasury, to collect on her delinquent balance with Treasury.  Id. ¶¶ 24–25.  Pioneer itemized Nancy's outstanding debt as $368,872.63 (principal), $2,136.83 (interest) and $180,749.94 (other), which Plaintiffs allege is an administrative cost.  Id. ¶ 26-28.

Plaintiffs allege that the administrative cost was calculated as a percentage rather than the actual or reasonably estimated cost of debt collection.  See id. ¶ 59.  Plaintiffs bring this action on behalf of all persons who were charged such administrative fees by Treasury.  Id.

## IV.     Procedural History

Plaintiffs initiated this lawsuit on February 14, 2020.  D. 1.  On March 19, 2021, Plaintiffs moved for class certification.  D. 27.  Defendants then moved to dismiss Plaintiffs' complaint, D. 35, and the Court stayed Plaintiffs' motion for class certification pending resolution of the motion to dismiss, D. 37.  Plaintiffs have also moved to amend their complaint.  D. 41.  The Court heard the parties on the pending motions and took these matters under advisement.  D. 56.

## V.      Discussion

### A.      **Motion to Dismiss**

#### 1.      *Sovereign Immunity*

Absent clear waiver, sovereign immunity shields the federal government, its agencies, and its officers sued in their official capacities from suit.  F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1994); Howe v. Bank for Int'l Settlements, 194 F. Supp. 2d 6, 19-21 (D. Mass. 2002) (applying sovereign immunity to official capacity suit against Secretary of the Treasury) (citing Am. Policyholders Ins.

4

Co. v. Nyacol Prods. Inc., 989 F.2d 1256, 1259 (1st Cir. 1993)).  "A waiver of the [f]ederal

[g]overnment's sovereign immunity must be unequivocally expressed in statutory text . . . and will

not be implied."  Lane v. Pena, 518 U.S. 187, 192 (1996) (citations omitted).

As a preliminary matter, neither 28 U.S.C. § 1331 (federal question jurisdiction) nor § 2201

(Declaratory Judgment Act) operates as a waiver of sovereign immunity.  See Berman v. United

States, 264 F.3d 16, 20 (1st Cir. 2001) (explaining that "[g]eneral jurisdictional statutes such as 28

U.S.C. § 1331 . . . do not waive sovereign immunity and therefore cannot be the basis for

jurisdiction over a civil action against the federal government"); Progressive Consumers Fed.

Credit Union v. United States, 79 F.3d 1228, 1230 (1st Cir. 1996) (noting that § 2201 does not

constitute a waiver of sovereign immunity because the Act "neither provides nor denies a

jurisdictional basis for actions under federal law, but merely defines the scope of available

declaratory relief") (citations omitted).  Additionally, Plaintiffs' Eighth Amendment claim (Count

I) cannot survive a sovereign immunity defense as alleged, since an Eighth Amendment claim for

damages (i.e., a Bivens claim) may not be brought against a federal agency or its officers sued in

their official capacity, like Treasury and Yellen here.  See D. 1 ¶¶ 70–72; McCloskey v. Mueller,

446 F.3d 262, 271–72 (1st Cir. 2006) (citing Ruiz Rivera v. Riley, 209 F.3d 24, 28 (1st Cir. 2000));

Carlson v. Green, 446 U.S. 14, 18–20 (1980).

Plaintiffs' invocation of the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b),

2671, also does not save the remaining claims in their complaint from a sovereign immunity bar.

See D. 1 ¶¶ 51 (asserting FTCA as basis for subject-matter jurisdiction), 76 (alleging damages for

violation of federal statute governing interest and costs charged on outstanding debt to U.S.

government), 79 (alleging unjust enrichment for same), 83 (seeking an accounting to determine

amounts "unlawfully collected . . . as a result of the unlawful conduct" alleged in complaint).  "The

FTCA . . . is a limited waiver of sovereign immunity that permits plaintiffs to bring claims against the United States for certain common law torts committed by its employees." Est. of Rahim by Rahim v. United States, 506 F. Supp. 3d 104, 121 (D. Mass. 2020); see Meyer, 510 U.S. at 475. "Federal courts have jurisdiction over these claims if they are 'actionable under § 1346(b).'" Brownback v. King, __ U.S. __, 141 S. Ct. 740, 746 (2021) (quoting Meyer, 510 U.S. at 477). "A claim is actionable if it alleges the six elements of § 1346(b), which are that the claim be: '[1] against the United States, [2] for money damages, . . . [3] for injury or loss of property, or personal injury or death [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'" Id. (quoting § 1346(b)). "[A] plaintiff must plausibly allege all six FTCA elements . . . for a court to have subject-matter jurisdiction over the claim," meaning "a plaintiff must plausibly allege that 'the United States, if a private person, would be liable to the claimant' under state law . . . to establish subject-matter jurisdiction." Id. at 749.

Here, none of Plaintiffs' claims are actionable under the FTCA. First, as to Count I (Eighth Amendment) and Count II (violation of 31 U.S.C. § 3717(e)(1)), such claims are premised on federal constitutional and statutory rights, not common law state torts. See Davric Maine Corp. v. U.S. Postal Serv., 238 F.3d 58, 63-64 (1st Cir. 2001) (citing Meyer, 510 U.S. at 477–78) (explaining that "source of substantive liability under the FTCA" must be state law). Second, as to Count III (unjust enrichment) and Count IV (accounting), such claims do not fall under the FTCA's limited sovereign immunity waiver because they are not state law tort claims for money damages. See Talbert v. United States, 932 F.2d 1064, 1065–66 (4th Cir. 1991) (explaining that

FTCA only provides relief for "money damages" thus courts "lack jurisdiction under the FTCA" to provide equitable relief); Branch v. F.D.I.C., 825 F. Supp. 384, 420 (D. Mass. 1993) (concluding that unjust enrichment claim was a "restitutionary action[]" not "within the purview of section 1346(b)"); Santagate v. Tower, 64 Mass. App. Ct. 324, 329 (2005) (describing unjust enrichment claim in Massachusetts as equitable in nature); McQuilly v. Belfi, 99 Mass. App. Ct. 1115, 2021 WL 914034, at *4 (2021) (explaining that "[a]n accounting is an equitable remedy available where there is 'a fiduciary relation between the parties' or an account 'so complicated that it cannot be conveniently taken in an action at law'") (citations omitted).

Plaintiffs respond that this Court has jurisdiction over their claims pursuant to 5 U.S.C. § 702 ("APA" or "§ 702"), but such assertion is raised only in opposition to the motion to dismiss, see D. 40, and their complaint does not cite § 702 or assert it as a basis for subject-matter jurisdiction, see D. 1; Viqueira v. First Bank, 140 F.3d 12, 18 (1st Cir. 1998) (noting that "jurisdiction must be apparent from the face of the plaintiffs' pleading" and rejecting argument based upon statutory grant of jurisdiction where "complaint contains no reference to . . . statutory provisions" as basis for same). Even if Plaintiffs had invoked the APA in their complaint, the sovereign immunity waiver it provides does not apply to actions seeking money damages. See Bowen v. Massachusetts, 487 U.S. 879, 892-93 (1988) (quoting § 702 sovereign immunity waiver and explaining that actions for money damages excluded from such waiver); D. 1 ¶¶ 72, 76, 79 (demanding money damages). Additionally, Plaintiffs assert that their FTCA claims survive because the complaint should be read solely to seek equitable relief. D. 40 at 2–3. This argument fails because the complaint explicitly seeks money damages, see D. 1 ¶¶ 72, 76, 79, and the FTCA only waives sovereign immunity for claims for money damages (and for state law torts), see Brownback, 141 S. Ct. at 749.

Accordingly, the Court ALLOWS the motion to dismiss the operative complaint on this basis.[1]

### 2. *Standing*

Defendants also argue that Nancy lacks standing to bring her claims because she lacks an actual or imminent injury. D. 36 at 19–20. The "'irreducible constitutional minimum' of standing" requires a plaintiff to show that they have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992)). "The harm must either have already happened or be sufficiently likely to happen in the future; 'it is not enough that the harm might occur at some future time.'" Nasuti v. U.S. Sec'y of State John Forbes Kerry, 137 F. Supp. 3d 132, 138 (D. Mass. 2016) (quoting Katz v. Pershing, LLC, 672 F.3d 64, 78 (1st Cir. 2012)). Defendants contend that because Nancy has not paid any of the delinquent debt or the administrative costs she now challenges, whereas Kevin has a wage garnishment order against him through which he has made some payments on the debt, her injury is "merely 'conjectural or hypothetical' . . . or 'speculative.'" D. 36 at 19–20. Plaintiffs counter that the assessment itself, which legally obligates Nancy to pay Defendants, constitutes an injury. D. 40 at 5. Here, Nancy has alleged that she suffered a past injury—an unlawful administrative cost assessed on her debt. To plead an injury, Nancy need not have actually paid the administrative cost, as she has alleged that Defendants (through a collection agency) sent her notice of same, an amount she is obligated to pay, and upon which interest or penalties have been added. See D. 1 ¶¶ 26, 30; cf. U.S. Bank, Nat. Ass'n v. U.S.

---

[1] Given the Court's conclusion as to the claims alleged in Plaintiffs' complaint, the Court does not address Defendants' assertion that Plaintiffs should have brought an action under the Tucker Act, see D. 36 at 15–16.

Dep't of Homeland Sec., No. 13-CV-00072, 2014 WL 494577, at *3 (E.D. Wis. Feb. 6, 2014) (concluding that plaintiff lacked standing to challenge debt owed to U.S. agency when agency had not made written demand for payment, and where debt "is not yet accruing interest of penalties").

**B.      Motion to Amend**

Plaintiffs have moved to amend their complaint in response to Defendants' motion to dismiss.  D. 41.  Plaintiffs' proposed amended complaint ("PAC") contains identical factual allegations but now purports to seek only equitable relief and has removed all mention of damages, substitutes a declaratory judgment count for the unjust enrichment count (Count III) and invokes § 702 as a basis for subject-matter jurisdiction rather than the FTCA.  See D. 41-1; see D. 42 at 9.

Defendants assert that amendment would be futile as the proposed amended complaint still does not provide for waiver of sovereign immunity.  See D. 47 at 8–9.  § 702 of the Administrative Procedure Act indeed provides a limited waiver of sovereign immunity for an action "seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority."  Bowen, 487 U.S. at 892 (quoting § 702).  In Bowen, the Supreme Court held that § 702's sovereign immunity waiver allowed Massachusetts to sue the Secretary of Health and Human Services to enforce a statutory provision that required the federal government to make certain Medicaid payments to the state.  In so holding, Bowen distinguished between suits seeking money damages, or "money in compensation for damage sustained," as not within the APA's waiver, and a suit for specific relief that may involve the payment of money, which falls within the waiver.  See id. at 900–901, 910–11 (concluding that declaratory and injunctive relief was within waiver of sovereign immunity).  Defendants contend that Bowen is inapposite to this case because "the statutory scheme here does not mandate 'the payment of money' from the government," like it did in Bowen.  D. 47 at 10.

But Bowen's holding is not limited to its facts; the Court's analysis of the statutory mandate determined whether the relief requested in that case was in substance a claim for money damages or for specific performance.  See Bowen, 487 U.S. at 900; id. at 917 (Scalia, J., dissenting) (agreeing with majority that § 702 inquiry is "whether the claim is in substance one for money damages"); Dep't of Army v. Blue Fox, Inc., 525 U.S. 255, 261–62 (1999) (explaining Bowen as articulating distinction "between specific relief and compensatory, or substitute, relief" and concluding that equitable lien asserted against U.S. Army did not fall within § 702 because "[l]iens, whether equitable or legal, are merely a means to the end of satisfying a claim for the recovery of money" and "by their nature constitute substitute or compensatory relief rather than specific relief"); Aetna Cas. & Sur. Co. v. United States, 71 F.3d 475, 479 (2d Cir. 1995) (concluding that because plaintiff "seeks injunctive relief to force the government to perform a legal obligation, the action is not forbidden by the APA's bar on money damages").  Thus, the question here is whether Plaintiffs seek to amend their complaint to seek specific relief or compensation in the form of money damages.

Defendants contend that the APA waiver does not apply because, even as alleged in the PAC, Plaintiffs essentially seek money damages.  See D. 47 at 11–12.  Defendants rely upon Blue Fox to argue that the "equitable relief Plaintiffs seek in this case is merely the means to satisfy a money damages claim."  Id. at 11; see Blue Fox, 525 U.S. at 261–62.  There, the Supreme Court held that an "equitable lien sought by [Blue Fox] constitutes a claim for 'money damages' [because] its goal [was] to seize or attach money in the hands of the Government as compensation for the loss resulting from the default of the prime contractor," which had not paid Blue Fox money it was due on a project as subcontractor.  Blue Fox, 525 U.S. at 255.  Here, however, Plaintiffs are not seeking substitute compensation for alleged losses.  See Bowen, 487 U.S. at 895 (explaining

that "specific remedies 'are not substitute remedies at all but attempt to give the plaintiff the very thing to which he was entitled'"); Blue Fox, 525 U.S. at 261–62 (making same distinction). Plaintiffs have alleged that Defendants assessed unlawful administrative costs and fees against them (i.e., that Defendants have taken or have attempted to take money they are not entitled to, but to which Plaintiffs are) and seek declaratory and injunctive relief prohibiting Defendants from charging such fees prospectively.  See id. at 14–15; Great-W. Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 212 (2002) (explaining that in Bowen "the suit was not merely for past due sums, but for an injunction to correct the method of calculating payments going forward"); D. 54 at 3 (asserting that relief sought "would result in the Defendants' recalculation of Collection Costs in compliance with applicable statutory and regulatory law").  Thus, to the extent the PAC seeks to prevent allegedly unlawful charges and future payments through a declaratory judgment or injunction, the APA's waiver of sovereign immunity covers those claims, and amendment in that regard would not be futile.

Plaintiffs' PAC also includes a claim for an accounting (PAC Count IV), which Defendants similarly insist is another means of seeking money damages.  D. 60 at 3.  While an accounting is "traditional[ly] [an] equity remedy," it may also be a legal one depending on the underlying relief sought.  In re Evangelist, 760 F.2d 27, 29 (1st Cir. 1985) (Breyer, J.) (citing Medtronic, Inc. v. Intermedics, Inc., 725 F.2d 440, 443-44 (7th Cir. 1984) (explaining that accounting can be either equitable or legal in nature depending on nature of relief sought, including "as an aid to computing damages," or "of profits from the alleged wrongdoing" to make an unjust enrichment claim and also to assess same but "considered incidental to the injunction" a plaintiff seeks)).  Here, Plaintiffs assert that such claim seeks "only to have Defendants disclose how [Kevin's] payments have been allocated among the Debt Categories in order to insure that, to the extent that any or all of such

payments have been allocated to administrative costs . . . that such payments can be properly

reallocated to other permissible Debt Categories," assuming the costs are deemed unlawful by the

Court.  D. 57 at 2.  Plaintiffs state that "Kevin does not seek a return of any payments made by

him to Defendants."  D. 57 at 2; see D. 41-1 at 14-15 (proposing to seek injunctive and declaratory

relief but not money damages); Cherokee Nation v. Dep't of the Interior, No. 19-CV-02154

(TNM), 2020 WL 224486, at *2 (D.D.C. Jan. 15, 2020) (rejecting § 702 sovereign immunity

challenge to accounting claim where complaint made no money damages claim).  Such assertion

characterizes the relief as incidental to the injunctive relief sought.  That is, if the administrative

costs are declared unlawful, Kevin seeks to have past payments of these costs reallocated to other

debt categories, like principal and interest, which the accounting would allegedly address.[2]

Finally, Defendants assert that the scope of § 702's sovereign immunity waiver (limited by

§ 704) does not extend to Plaintiffs claims here because they have an adequate remedy for damages

in the Court of Federal Claims.  See D. 47 at 15; Suburban Mortg. Assocs., Inc. v. U.S. Dep't of

Hous. & Urb. Dev., 480 F.3d 1116, 1125 (Fed. Cir. 2007) (explaining that even if claim satisfies

§ 702 limitation on money damages, "a claim seeking monetary relief, however defined, may

nevertheless be within the jurisdictional scope of the Tucker Act").  In light of the Court's

conclusion above that the PAC seeks declaratory and injunctive relief, and that Plaintiffs have

---

[2] Defendants have filed (under seal) a spreadsheet that purports to include such categorized debt payments as to Kevin's debt and argue that disclosure of same moots Kevin's accounting claim. See D. 60 at 2.  The Court rejects this argument in light of Plaintiffs pressing the accounting claim on behalf of a putative class who seek the same information classwide.  See Campbell-Ewald Co. v. Gomez, 577 U.S. 153, 162 (2016) (explaining that satisfaction of individual claim cannot moot putative class claims).  As to the putative class, Defendants point out that Plaintiffs have not withdrawn their motion for class certification, D. 27, which seeks certification pursuant to Fed. R. Civ. P. 23(b)(3) (i.e., a damages class) to argue that Plaintiffs true motive is to seek damages, see D. 28.  Again, Plaintiffs have disclaimed money damages in the PAC, which will become the operative complaint, and the class certification motion was stayed pending resolution of these motions. D. 37.

disclaimed money damages, <u>see</u> D. 54 at 3, such argument necessarily fails because the Court of Federal Claims cannot provide the equitable remedies sought here, that this Court enjoin Treasury from assessing the allegedly unlawful administrative costs on Plaintiffs' debts.   <u>See</u> <u>Bowen</u>, 487 U.S. at 905; <u>Suburban Mortg. Assocs., Inc.</u>, 480 F.3d at 1125.

Accordingly, Plaintiffs' motion to amend their complaint, D. 41, is ALLOWED.

**VI.     Conclusion**

For all these reasons, the Court ALLOWS Defendants' motion to dismiss, D. 35, and ALLOWS Plaintiffs' motion to amend, D. 41.   The amended complaint should be filed by December 20, 2021.

        **So Ordered.**

                                        /s/ Denise J. Casper
                                        United States District Judge